**EXHIBIT 2**

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/16/2025 12:31 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

1   Robert Tauler, Esq.  (SBN 241964)
    rtauler@taulersmith.com
2   Gil Peles, Esq. (SBN 238889)
    gpeles@taulersmith.com
3   TAULER SMITH LLP
    626 Wilshire Boulevard, Suite 550
4   Los Angeles, California 90017
    Tel: (213) 927-9270
5
6   *Attorneys for Plaintiff*
    *Dana Hughes*
7
8              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**
9                        **COUNTY OF LOS ANGELES**
10
11   DANA HUGHES, an individual          Case No.  25STCV20965
12              Plaintiff,
13        v.                             **COMPLAINT FOR VIOLATIONS OF THE
                                         CALIFORNIA TRAP AND TRACE LAW
14   VERYABLE, INC., a Texas corporation; DOES 1   (CAL. PENAL CODE § 638.51)**
     through 15, inclusive
15
16              Defendant.
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT

## I.    <u>INTRODUCTION</u>

1.    Defendant uses data broker software on its website to secretly collect data about a website visitor's computer, location, and browsing habits.  The data broker software then compiles this data and correlates that data with extensive external records it already has about most Californians in order to learn the identity of the website user.

2.    Defendant's installation and use of data broker software without obtaining consent is a violation of the California Trap and Trace Law.

## II.    <u>JURISDICTION AND VENUE</u>

3.    This Court possesses subject matter jurisdiction over this action pursuant to the California Constitution, Article VI, Section 10. Defendant's violations of California Penal Code section 638.51 create statutory damages that exceed this Court's jurisdictional minimum. This case involves Defendant's breaches of the California Invasion of Privacy Act ("CIPA"), a critical statutory framework that protects California residents from unlawful surveillance technologies.

4.    Defendant Veryable, Inc. ("Veryable) conducts substantial, continuous, and systematic business operations within California. These operations render Defendant essentially "at home" in this state for litigation purposes. Defendant actively markets its job placement services to California residents. Defendant maintains ongoing commercial relationships with California customers. Defendant derives substantial revenue from California-based transactions through its operation of the Website. Defendant deliberately avails itself of California's commercial privileges by operating its interactive Website infrastructure, which Defendant specifically designed to engage California consumers. Defendant's continuous California business activities establish general personal jurisdiction sufficient for this Court to adjudicate any claims against Defendant.

5.    This Court possesses specific personal jurisdiction over Defendant Veryable pursuant to California Code of Civil Procedure section 410.10 because Defendant expressly aimed and directed its tortious activities at California residents. Defendant deliberately engineered and programmed its Website with tracking technology to capture data from California-based internet users while those users browsed within California's territorial boundaries. Defendant transformed its own Website into the instrument of its unlawful surveillance in California.

6.      Defendant specifically intended its surveillance operations to cause injury to California residents. Defendant configured its tracking systems on its Website to identify, profile, and exploit California users. Defendant's implementation of the surveillance scheme, through its own Website, necessarily involved LinkedIn's California-based technical infrastructure. This action by Defendant made California the focal point of Defendant's unlawful operations and the situs of the harm.

7.      Defendant's purposeful direction of its surveillance activities at California residents through its own Website, combined with its deliberate use of a California-based entity's infrastructure to effectuate this surveillance, satisfies all constitutional due process requirements for the exercise of specific personal jurisdiction by this Court.

8.      Venue is proper in Los Angeles County pursuant to California Code of Civil Procedure section 395(a). Plaintiff resides within this County. Defendant operated its surveillance technology against Plaintiff's device while Plaintiff was physically present in this County. Defendant's unauthorized data capture and privacy invasion, orchestrated through Defendant's Website, occurred within this County's territorial boundaries. Plaintiff suffered the resulting harm and damages from Defendant's actions within this County.

9.      A substantial part of the events giving rise to this action, namely Defendant's activation of its surveillance system against Plaintiff, occurred within this County. Defendant's system activated during Plaintiff's Website visits while Plaintiff was physically located within this County. This activation by Defendant created the privacy violations and statutory damages at issue in this litigation.

### III.    PARTIES

10.     Plaintiff Dana Hughes is a California resident who continuously resides in Los Angeles County. Plaintiff maintains reasonable expectations of privacy when browsing websites. Defendant systematically violated these expectations through its unauthorized surveillance activities.

11.     Defendant Veryable, Inc. is a Texas corporation with its principal business address at 2019 N. Lamar St., Suite 250, Dallas, TX 75056. Defendant Veryable conducts widespread business throughout California. Defendant markets and provides job placement services to California residents through its Website and related channels.

12.     Plaintiff identifies Telos Legal Corp., located at 1818 11th Street, Suite 101, Sacramento, CA 95811, as Defendant's registered agent for service of process in California.

13.     Plaintiff identifies DOE Defendants 1 through 15 as unknown entities that Defendant directed and controlled to participate in implementing or maintaining Defendant's surveillance system. Plaintiff will seek leave to amend this Complaint to identify these entities when Defendant's discovery responses reveal their true names and roles.

14.     Each DOE Defendant acted as Defendant's agent or employee in Defendant's implementation of the surveillance scheme described herein. Each DOE Defendant operated within the scope of its relationship with Defendant and participated with Defendant in the common plan to unlawfully track California residents for Defendant's commercial gain.

## IV.     FACTUAL ALLEGATIONS

15.     Veryable is the proprietor of www.veryableops.com, a website that offers job placement services.

16.     Defendant has partnered with registered California Data Brokers in order to deanonymize and develop clandestine user profiles on otherwise anonymous website visitors (the "Data Brokers," and each a "Data Broker").  Defendant has done this by installing Data Broker Software Development Kits ("DBSDKs") on its website.

17.     DBSDKs are designed to track and correlate visitors by capturing electronic impulses designed to identify them. This is accomplished through "browser fingerprinting," a process by which Data Brokers are able to ascertain the identity of a website visitor by plotting hundreds of personal identifiers, including a user's geolocation, device information, identification and cross-referencing of malicious cookies installed on their devices, and other traits evident from a user's browser.

### Registered California Data Brokers

18.     Data Brokers are companies whose core business is to collect, aggregate, analyze, and sell or license personal and non-personal data about individuals and organizations.  Data Brokers operate largely behind the scenes, often without direct interaction with the individuals whose data they monetize.

19.     Data Brokers gather information from a wide variety of sources, including by purchasing information from commercial sources like retailers, financial institutions, online marketplaces, subscription services, and loyalty programs.

20.     Once the data is collected it is consolidated and organized into comprehensive profiles that may include thousands of attributes per individual.  The data is then cross-referenced and linked using unique identifiers like device IDs and cookies to unify data about individual users from multiple sources.

21.     Data Brokers are accumulating data and profiling individuals to an alarming extent.  As the CEO of a Data Broker recently described the extent of their surveillance abilities as to an otherwise anonymous individual:  "We know who she is, what she watches, what she reads, and who she lives with.  [We] also know who she follows on social media, what she buys online and offline, where she buys, when she buys, and more importantly, why she buys.  We know that [she] has two children and that her kids drink lots of premium fruit juice. We can see that the price of the SKU she buys has been steadily rising on her local retailer's shelf. We can also see that [her] income has not been keeping pace with inflation."[1]

22.     Given the amount of data available by way of the Data Brokers' practices, a company like Defendant has an incentive to partner with a Data Broker so that it can learn the identity of their website visitors in order to harass them with unwanted solicitations.

23.     Defendant has in fact partnered with the Data Brokers mentioned herein, by installing software on Defendant's website in order to deanonymize, identify and target prospective customers, while allowing Data Brokers to access, use, and monetize the data provided by Defendant, in manners that are never shared with anyone outside of their organization who does not purchase it.

**Defendant and the California Data Brokers**

24.     Defendant's installation and use of DBSDKs violates the California Trap and Trace law.

25.     Specifically, Defendant has installed the SDK of 6Sense on www.veryableops.com. 6sense helps companies like Defendant to identify anonymous website visitors and their organizations, through the 6SENSE DBSDK.  According to 6Sense, the 6SENSE DBSDK "connects the unknown,

---

[1] Lucas Ropek, Data Broker Brags About Having Highly Detailed Personal Information on Nearly All Internet Users, March 15 2025 (Gizmodo.com).

anonymous prospect to the known, seeing every step and footprint of every potential buyer." As a registered data broker, 6sense, through the 6SENSE DBSDK aggregates behavioral data to de-anonymize web traffic and enable targeted advertising and sales outreach as detailed herein.

26.    First, the 6SENSE DBSDK deploys JavaScript tags (the "6sense Tag" or "Visitor Recognition" script) on client websites. When a user visits a site, the 6sense Tag automatically fires, collecting data about the user's interactions, including page www.veryableops.com, timestamps, clicks, and browsing behavior.

27.    Second, the 6SENSE DBSDK also drops cookies (e.g. _gd_visitor, _gd_session) and pixel tags on the user's browser to recognize that user across visits and devices. These cookies persist up to one year and store a unique identifier that tracks the visitor's site usage.

28.    Third, the 6SENSE DBSDK stores information gathered from these processes by way of JSON files, and sends the information back to 6Sense.

29.    Fourth, the 6SENSE DBSDK "compiles data and correlates that data with external records." In other words, the 6SENSE DBSDK matches the captured information to its extensive off-site database of company and buyer information.

30.    Visitors do not meaningfully consent to this identification. The tracking is third-party and occurs by default and visitors of Defendant's website are not made aware of, or able to disable this on each site.

**Plaintiff**

31.    Plaintiff visited www.veryableops.com on April 1, 2025. When Plaintiff did so, their identifying information by way of electronic impulses was sent to 6Sense. The purpose of this transfer of data from Defendant to the Data Brokers was for de-anonymization, profiling, and targeting. The transfer benefitted both the Defendant and the Data Broker financially.

32.    On information and belief, Data Brokers took Plaintiff's information and added it to their profiles of Plaintiff. In turn, Defendant received other relevant data obtained by the Data Brokers regarding Plaintiff. The Data Brokers could then use data regarding Plaintiff's visit to further profile Plaintiff, with the objective of monetizing this data by selling or licensing it to other entities, including law enforcement. In this regard, a recent report by the Brennan Center, a public policy nonprofit, has

1  explained that "government agencies may purchase personal data to further their exercise of coercive

2  powers, including the ability to deport, arrest, incarcerate, or even use lethal force." [2]

3      33.    The purpose of the 6SENSE DBSDK is to identify users.  6sense's own documentation

4  confirms that it's software "empowers…100% visibility into their buyers' identities" by linking an

5  anonymous browser to a known company or person.

6      34.    Indeed, 6sense explains that the 6SENSE DBSDK works by "match[ing] anonymous

7  digital intent signals to buyers and accounts." This fits the definition of a "trap and trace device" under

8  Cal. Penal Code § 638.50(c) because the 6sense process captures signaling information (who the visitor

9  is and what they are doing) in order to identify the source or an otherwise anonymous website visit.

10     35.    There is no way for Plaintiff to learn what the Data Brokers did with Plaintiff's data,

11  including what inferences the Data Brokers have gleaned from it, or when, why and to whom the Data

12  Brokers have sold or licensed Plaintiff's data.  As such, Plaintiff has been injured by Defendant's

13  surveillance practices.

14     36.    Plaintiff was never informed of, and therefore could not have consented to, data

15  collection by the Data Brokers for mercantile purposes.  Plaintiff has no way to know the scope of the

16  injury suffered because the Data Brokers operate in secret and without public disclosure of their

17  operations.

18                    **The 6SENSE DBSDK is a Trap and Trace Device**

19     37.    CIPA defines a "trap and trace device" as "a device or process that captures the incoming

20  electronic or other impulses that identify the originating number or other dialing, routing, addressing,

21  or signaling information reasonably likely to identify the source of a wire or electronic communication,

22  but not the contents of a communication."   Cal. Penal Code § 638.50(c).

23     38.    The DBSDKs are a process to identify the source of electronic communication by

24  capturing electronic impulses sent out from users' devices and identifying dialing, routing, addressing,

25  and signaling information about or generated by users. The users are never informed that the Website is

26  collaborating with Registered California Data Brokers to obtain their phone numbers and other

27  identifying information.

28

---

[2] https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole

COMPLAINT

39.     The DBSDKs are "reasonably likely" to identify the source of electronic impulses sent from devices visiting the Website.  In fact, they are  designed solely to meet this objective.

40.     Defendant did not obtain a court order before installing the DBSDKs on its Website.

41.     Defendant did not obtain the express or implied consent of  Plaintiff to be subjected to data sharing with Registered California Data Brokers for the purposes of de-anonymization, profiling, and targeting.

42.     Defendant is statutorily ineligible to assert consent as a defense to its illegal use of a Trap and Trace device. Under Penal Code § 638.51(b), a consent defense is only available to a "provider of electronic or wire communication service," which Defendant is not.

43.     The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et. seq.*, imposes civil liability and provides for statutory damages for the installation of trap and trace software without a court order. *Id.* §§ 637.2, 638.51; *see Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (holding that Data Broker Software was properly alleged to be a trap and trace device because it communicates over the internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication," and is not limited to telephone lines).

## FIRST CAUSE OF ACTION

### Violations of California Trap and Trace Law

### Cal. Penal Code § 638.51 (the "California Trap and Trace Law")

44.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

45.     The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…."  Cal. Penal Code § 638.51(a).

46.     A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  *Id.* § 638.50(c).

47.    Defendant uses a trap and trace process by deploying the DBSDKs on its Website because the DBSDKs are designed to capture signaling information of Website visitors. As such, the DBSDKs is designed precisely to identify the source of the electronic and wire communications sent from the devices of users in California visiting the Website in violation of the California Trap and Trace Law.

48.    Defendant did not obtain a court order before installing the DBSDKs on the Website. Defendant also did not obtain consent from Plaintiff before using trap and trace technology to identify visitors to its Website.

49.    CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.

**<u>PRAYER</u>**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.    An order that data unlawfully obtained be disgorged;

2.    An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

3.    Statutory damages pursuant to CIPA;

4.    Reasonable costs; and

5.    All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: July 16, 2025                                TAULER SMITH LLP

                                        By:    */s/ Robert Tauler*
                                               Robert Tauler, Esq.
                                               *Attorneys for Plaintiff*
                                               *Dana Hughes*

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff hereby demands a trial by jury.

3

4    DATED: July 16, 2025                          TAULER SMITH LLP

5

6                                          By:   _/s/ Robert Tauler_____
                                                Robert Tauler, Esq.
7                                               *Attorneys for Plaintiff*
                                                *Dana Hughes*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28