Robert Tauler (SBN 241964)
rtauler@taulersmith.com
Gil Peles, Esq. (SBN 238889)
gpeles@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff Dana Hughes*

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA HUGHES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERYABLE, INC., a Texas corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | **Case No. 2:25-cv-07699-MWF-AGR**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**1. VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)** |

## INTRODUCTION

1. Defendant Veryable, Inc., ("Defendant" or "Veryable") uses data broker software on its website – https://www.veryableops.com/on-demand-labor (the "Website") – to secretly collect data about Website visitors' computer, location, and browsing habits. The data broker software then compiles this data and correlates that data with extensive external records it already has about most Californians in order to learn the identity of the Website user.

2. Defendant's installation and use of data broker software without obtaining consent is a violation of the California Trap and Trace Law.

## JURISDICTION AND VENUE

3. This Court possesses subject matter jurisdiction over this action pursuant to the California Constitution, Article VI, Section 10. Defendant's violations of California Penal Code section 638.51 create statutory damages that exceed this Court's jurisdictional minimum. This case involves Defendant's breaches of the California Invasion of Privacy Act ("CIPA"), a critical statutory framework that protects California residents from unlawful surveillance technologies.

4. Veryable is a Texas corporation that offers business and proprietors a management platform that assists in efficient labor planning. Defendant maintains ongoing commercial relationships with California customers. Defendant derives substantial revenue from California-based transactions through its operation of the Website. Defendant deliberately avails itself of California's commercial privileges by operating its interactive Website infrastructure, which Defendant specifically designed to engage California customers. Defendant's continuous California business activities establish general personal jurisdiction sufficient for this Court to adjudicate any claims against Defendant.

5. This Court possesses specific personal jurisdiction over Defendant Veryable pursuant to California Code of Civil Procedure section 410.10 because

Defendant expressly aimed and directed its tortious activities at California residents. Defendant deliberately engineered and programmed its Website with tracking technology to capture data from California-based internet users while those users browsed within California's territorial boundaries. Defendant transformed its own Website into the instrument of its unlawful surveillance in California.

6. Defendant specifically intended its surveillance operations to cause injury to California residents. Defendant configured its tracking systems on its Website to identify, profile, and exploit California users.

7. Defendant's purposeful direction of its surveillance activities at California residents through its own Website satisfies all constitutional due process requirements for the exercise of specific personal jurisdiction by this Court. A substantial part of the events giving rise to this action, namely Defendant's activation of its surveillance system against Plaintiff, occurred within this District. Defendant's system activated during Plaintiff's Website visit while Plaintiff was physically located within this District. This activation by Defendant created the privacy violations and statutory damages at issue in this litigation.

8. Venue is proper in Los Angeles County pursuant to California Code of Civil Procedure section 395(a). Plaintiff resides within this County. Defendant operated its surveillance technology against Plaintiff's device while Plaintiff was physically present in this County. Defendant's unauthorized data capture and privacy invasion, orchestrated through Defendant's Website, occurred within this County's territorial boundaries. Plaintiff suffered the resulting harm and damages from Defendant's actions within this County.

## PARTIES

9. Plaintiff Dana Hughes ("Plaintiff") is, and at all times relevant to this complaint has been, a citizen of California residing and located within Los Angeles County. Plaintiff maintains reasonable expectations of privacy when browsing websites. Defendant systematically violated these expectations through its

FIRST AMENDED CLASS ACTION COMPLAINT

3

unauthorized surveillance activities.

10. Veryable owns, operates, and/or controls https://www.veryableops.com/on-demand-labor (the "Website"). Through the Website, Defendant offers customers assistance with labor management and planning.

11. Plaintiff identifies Doe Defendants 1 through 15 as unknown entities that Defendant directed and controlled to participate in implementing or maintaining Defendant's system. Plaintiff will seek leave to amend this Complaint to identify these entities when Defendant's discovery responses reveal their true names and roles.

12. Each Doe Defendant acted as Defendant's agent or employee in Defendant's implementation of the surveillance scheme described herein. Each Doe Defendant operated within the scope of its relationship with Defendant and participated with Defendant in the common plan to unlawfully track California residents for Defendant's commercial gain.

## FACTUAL ALLEGATIONS

13. Defendant is the proprietor of the Website.

14. The Website, like most other websites, can determine the approximate geolocation of its visitors once the visitors request to visit the Website from their devices. On information and belief, Defendant and the Website can determine the geolocation from, for example, a visitor's IP address. The unlawful surveillance alleged herein collects information that can identify a Website visitor well beyond his or her IP.

15. Defendant has partnered with at least one registered California Data Broker in order to deanonymize and develop clandestine user profiles on otherwise anonymous visitors to the Website (a "Data Broker"). Defendant has done this by installing at least one Data Broker Software Development Kit on the Website.

16. DBSDKs are designed to track and correlate visitors by capturing

electronic impulses designed to identify them. This is accomplished through "browser fingerprinting," a process by which Data Brokers are able to ascertain the identity of a website visitor by plotting hundreds of personal identifiers, including a user's geolocation, device information, identification and cross-referencing of malicious cookies installed on their devices, and other traits evident from a user's browser.

### Registered California Data Brokers

17. Data Brokers are companies whose core business is to collect, aggregate, analyze, and sell or license personal and non-personal data about individuals and organizations. Data Brokers operate largely behind the scenes, often without direct interaction with the individuals whose data they monetize.

18. Data Brokers gather information from a wide variety of sources, including by purchasing information from commercial sources like retailers, financial institutions, online marketplaces, subscription services, and loyalty programs.

19. Once the data is collected it is consolidated and organized into comprehensive profiles that may include thousands of attributes per individual. The data is then cross-referenced and linked using unique identifiers like device IDs and cookies to unify data about individual users from multiple sources.

20. Data Brokers are accumulating data and profiling individuals to an alarming extent. As the CEO of a Data Broker recently described the extent of their surveillance abilities as to an otherwise anonymous individual: "We know who she is, what she watches, what she reads, and who she lives with. [We] also know who she follows on social media, what she buys online and offline, where she buys, when she buys, and more importantly, why she buys. We know that [she] has two children and that her kids drink lots of premium fruit juice. We can see that the price of the SKU she buys has been steadily rising on her local retailer's shelf. We can also see

that [her] income has not been keeping pace with inflation."[1]

21. Given the amount of data available by way of the Data Brokers' practices, a company like Defendant has an incentive to partner with a Data Broker so that it can learn the identity of their website visitors in order to harass them with unwanted solicitations.

22. Defendant has in fact partnered with the Data Brokers mentioned herein, by installing software on the Website in order to deanonymize, identify and target prospective customers, while allowing Data Brokers to access, use, and monetize the data provided by Defendant, in manners that are never shared with anyone outside of their organization who does not purchase it.

## Defendant and the California Data Brokers

23. Defendant's installation and use of DBSDKs violates the California Trap and Trace law.

24. Specifically, Defendant installed the DBSDK of 6Sense (the "6Sense DBSDK").

25. 6sense helps companies like Defendant to identify anonymous website visitors and their organizations, through the 6Sense DBSDK. According to 6Sense, the 6Sense DBSDK "connects the unknown, anonymous prospect to the known, seeing every step and footprint of every potential buyer." As a registered California Data Broker, 6sense, through the 6Sense DBSDK, aggregates data to de-anonymize web traffic and enable targeted advertising and sales outreach as follows:

26. First, the 6Sense DBSDK deploys JavaScript tags (the "6Sense Tag" or "Visitor Recognition" script) on client websites. When a user visits a site, the 6sense Tag automatically fires, collecting data about the user's interactions, including page URLs, timestamps, clicks, and browsing behavior.

27. Second, the 6Sense DBSDK drops cookies (e.g. _gd_visitor,

---

[1] Lucas Ropek, Data Broker Brags About Having Highly Detailed Personal Information on Nearly All Internet Users, March 15 2025 (Gizmodo.com).

FIRST AMENDED CLASS ACTION COMPLAINT

6

_gd_session) and pixel tags on the user's browser to recognize that user across visits and devices. These cookies persist up to one (1) year and store a unique identifier that tracks the visitor's site usage (e.g. number of visits, time spent). This constitutes unauthorized and ongoing accessing and monitoring of a website user's web-browsing activity, an extreme invasion of her privacy. The harms to users involved are similar to those associated with the common law tort of intrusion upon seclusion.

28. Third, the 6Sense DBSDK stores information gathered from these processes by way of JSON files, and sends the information back to 6Sense.

29. Fourth, the 6Sense DBSDK "compiles data and correlates that data with external records." In other words, the 6Sense DBSDK matches the captured information to its extensive off-site database of company and buyer information.

30. Visitors to the Website do not meaningfully consent to this identification. The tracking described herein is third-party and occurs by default. Visitors to Defendant's Website are not made aware of, and are not able to disable, this tracking and identification.

**Plaintiff Was Subjected to the Trap and Trace Device on the Website**

31. Plaintiff visited the Website on April 1, 2025. When Plaintiff did so, their identifying information by way of electronic impulses was sent to 6Sense. On information and belief, such information included at the very least Plaintiff's approximate location, and data about their browser and device. The purpose of this transfer of Plaintiff's data from Defendant to 6Sense was for de-anonymization, profiling, targeting and ongoing browsing tracking (as described *supra*). The transfer benefitted both Defendant and 6Sense financially.

32. On information and belief, 6Sense took Plaintiff's information and added the information to its profiles of Plaintiff. In turn, Defendant received other relevant data obtained by 6Sense regarding Plaintiff. 6Sense could then use data regarding Plaintiff's visit to further profile Plaintiff, with the objective of monetizing this data by selling or licensing it to other entities, including law enforcement and

Case 2:25-cv-07699-MWF-AGR   Document 11   Filed 09/22/25   Page 8 of 14   Page ID #:72

government agencies.

33. In this regard, a recent report by the Brennan Center, a public policy nonprofit, has explained that "government agencies may purchase personal data to further their exercise of coercive powers, including the ability to deport, arrest, incarcerate, or even use lethal force."[2] There are recent examples of tech companies exchanging information with the federal government in ways that threaten harm to women's freedom, minority viewpoints and marginalized United States citizens or residents. For example, U.S. Immigration and Customs Enforcement (ICE) has partnered with Palantir Technologies, a Denver-based software company, to use artificial intelligence and data mining to identify, track, and deport suspected noncitizens.[3] Another example of such government data exchange is the provision by Meta, pursuant to valid warrants, of user data such as Facebook messages, for the purpose of investigating and prosecuting state crimes related to abortion.[4]

34. The prospect of private entities such as Data Brokers sharing data they have collected and organized into individualized profiles with government entities has increased significantly in 2025. Columbia and Brown Universities recently agreed to turn over data about applicants and students, such as their race, grades and standardized test scores to the federal government.[5] During this year, tech companies have complied with unprecedented demands for concessions from the federal executive branch.[6] Further, the current federal administration has threatened

---

[2] https://www.brennancenter.org/our-work/research-reports/closing-data-broker-loophole

[3] https://www.americanimmigrationcouncil.org/blog/ice-immigrationos-palantir-ai-track-immigrants/.

[4] https://www.nbcnews.com/tech/tech-news/facebook-turned-chat-messages-mother-daughter-now-charged-abortion-rcna42185.

[5] *See, e.g.,* Sharon Otterman & Anemona Hartocollis, "Columbia and Brown to Disclose Admissions and Race Data in Trump Deal," (New York Times Aug. 6, 2025), found at https://www.nytimes.com/2025/08/05/nyregion/columbia-brown-admissions-trump.html.

[6] *See, e.g.,* Rob Wile & Allan Smith, "The CEO in chief: How Trump is getting what he wants from big business," (NBCNews.com Aug. 14, 2025), found at

8

retaliatory action against pharmaceutical companies that refuse to comply with demands to lower drug prices.[7] No clear legal authority exists preventing the sale or dissemination of user data by Data Brokers to the federal government.

35. The purpose of the 6Sense DBSDK is to identify users. 6Sense's own documentation confirms that its software "empowers…100% visibility into their buyers' identities" by linking an anonymous browser to a known company or person.

36. The 6Sense DBSDK meets the definition of a "trap and trace device" under Cal. Penal Code § 638.50(c) because the 6Sense process captures signaling information (who the visitor is, and what he or she is doing) in order to identify the source of an otherwise anonymous website visit – which such visit constitutes an electronic communication. There is no way for Plaintiff to learn what 6Sense did with Plaintiff's data, including what inferences 6Sense has gleaned from it, or when, why and to whom 6Sense has sold or licensed Plaintiff's data. As such, Plaintiff has been injured by Defendant's surveillance practices.

37. Plaintiff was never informed of, and therefore could not have consented to, data collection by 6Sense for mercantile purposes. Plaintiff has no way to know the scope of the injury suffered because the Data Brokers, including 6Sense, operate in secret and without public disclosure of their operations.

**The 6Sense DBSDK is A Trap and Trace Device.**

38. CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

---

https://www.nbcnews.com/business/business-news/what-trump-involvement-major-corporations-means-us-politics-business-rcna224630.
[7] *See, e.g.,* Anna Bratulic, "In latest Trump salvo, pharma giants face 60-day ultimatum on price cuts," (First Word Pharma, July 31, 2025), found at https://firstwordpharma.com/story/5985417.

39. The 6Sense DBSDK is a process to identify the source of electronic communication by capturing electronic impulses sent out from Website users' devices and identifying dialing, routing, addressing, and signaling information about or generated by the users. The users are never informed that the Website is collaborating with 6Sense to obtain their phone numbers and other identifying information.

40. The 6Sense DBSDK is "reasonably likely" to identify the source of electronic impulses sent from devices visiting the Website. In fact, the 6Sense DBSDK is designed solely to meet this objective.

41. Defendant did not obtain a court order before installing or using the 6Sense DBSDK on its Website.

42. Defendant did not obtain the express or implied consent of Plaintiff to be subjected to data sharing with 6Sense for the purposes of de-anonymization, profiling, and targeting.

43. Defendant is statutorily ineligible to assert consent as a defense to its illegal use of a Trap and Trace device. Under Penal Code § 638.51(b), a consent defense is only available to a "provider of electronic or wire communication service," which Defendant, a company that operates a website for product and information promotion, is not. *See, e.g., Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025); *Mirmalek v. Los Angeles Times Communications LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024).

44. The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et seq.*, imposes civil liability and provides for statutory damages for the installation and use of trap and trace software without a court order. *Id.* §§ 637.2, 638.51; *see Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (holding that data broker software was properly alleged to be a trap and trace device because it communicates over the internet and

the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication," and is not limited to telephone lines).

## CLASS ALLEGATIONS

45. Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

> **All persons within California whose identifying information was sent to registered California Data Brokers including 6Sense as a result of visiting the Website within the limitations period.**

46. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

47. COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

    a. Whether the 6Sense DBSDK is a trap and trace process as defined by California law;

    b. Whether Plaintiff and Class Members are entitled to statutory damages;

    c. Whether Class Members are entitled to injunctive relief; and

    d. Whether Class Members are entitled to disgorgement of unlawfully obtained data.

48. TYPICALITY: As a person who visited Defendant's Website and whose personal information was fingerprinted and de-anonymized by 6Sense,

FIRST AMENDED CLASS ACTION COMPLAINT

11

Plaintiff is asserting claims that are typical of the Class.

49. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

50. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of each Class Member is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed and address identical issues.

## FIRST CAUSE OF ACTION

**Violations of California Trap and Trace Law**

**Cal. Penal Code § 638.51 (the "California Trap and Trace Law")**

51. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

52. The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…." Cal. Penal Code § 638.51(a).

53. A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c).

54. The 6Sense DBSDK, as deployed on the Website, constitutes a trap and trace device under Cal. Penal Code § 638.50(c). The 6Sense DBSDK is designed to identify the source of the electronic and wire communications sent from the devices

of users in California visiting the Website in violation of the California Trap and Trace Law.

55. Defendant did not obtain a court order before using or installing the 6Sense DBSDK on the Website. Defendant also did not obtain consent from Plaintiff or any of the Class Members before using trap and trace technology, including the 6Sense DBSDK, to identify visitors to its Website.

56. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;
2. An order that data unlawfully obtained by Defendant's deployment of a trap and trace device be disgorged;
3. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;
4. Statutory damages pursuant to CIPA;
5. Reasonable attorneys' fees and costs; and
6. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: September 22, 2025         TAULER SMITH LLP

                                  By:   */s/ Robert Tauler*
                                        Robert Tauler, Esq.
                                        Gil Peles, Esq.

                                  *Attorneys for Plaintiff Dana Hughes*

FIRST AMENDED CLASS ACTION COMPLAINT

13

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: September 22, 2025         TAULER SMITH LLP

By: */s/ Robert Tauler*
    Robert Tauler, Esq.
    Gil Peles, Esq.

*Attorneys for Plaintiff Dana Hughes*